48 P.3d 1208

**ARIZONA DEPARTMENT OF CORRECTIONS, Plaintiff–Appellant,**

v.

**STATE of Arizona PERSONNEL BOARD; Becky Jordan, Chairperson; Betty Teague, Vice Chair; Linda Thompson, Barry Levitch and Josie Ippolito, Members; and Mario Diaz, Defendants–Appellees.**

**No. 1 CA–CV 01–0492.**

Court of Appeals of Arizona, Division 1, Department C.

July 2, 2002.

Janet Napolitano, Attorney General, by Michael M. Walker, Assistant Attorney General, Phoenix, for appellant.

Sundberg & Mousel, by Craig L. Mousel, Phoenix, for appellee Arizona Personnel Board and Members.

Roberson & Shelley, by Robert J. Roberson, Jerrold F. Shelley, Yuma, for appellee Mario Diaz.

**OPINION**

LANKFORD, J.

¶ 1 The Arizona Department of Corrections ("ADOC") appeals from the superior court's order upholding the State Personnel Board's decision to modify the discipline that ADOC had imposed on employee Mario Diaz. The issue presented is whether the Board correctly concluded that the discipline was "excessive." We reverse the superior court's

order and remand for reinstatement of ADOC's selected disciplinary measure.

¶ 2 ADOC demoted Diaz. Diaz had begun working for ADOC in 1991. He eventually became a correctional sergeant at the state prison complex at Yuma.

¶ 3 By letter dated July 20, 2000, Yuma prison warden Samuel Sublett notified Diaz that he would be demoted from Correctional Sergeant, Grade 17, to Correctional Officer II, Grade 16, for the following reasons:

1. On February 29, 2000 at approximately 8:30 a.m., you [Diaz] told an inmate, "I'll have your ass."

2. On November 20, 1999 at approximately 10:00 p.m., while on approved travel status and representing the Arizona State Prison Complex of Yuma, you initiated a disturbance at a dance attended by at least ten other Department employees. You directly referred to an employee as "bitch" and "whore." Additionally, in very close physical proximity and with clenched fists, you verbally assaulted a second employee. You shouted a variety of obscenities. It became necessary for other Department employees present to intercede and escort you from the room. During this disturbance, your misconduct resulted in at least one table being turned over and a response from local law enforcement authorities.

3. On August 12, 1999 at approximately 1:00 p.m., you placed handcuffs on an inmate and ordered him to his knees with his chest against the side of a building. The outside temperature exceeded 100 degrees and the inmate did not pose a threat to your safety, the safety of others, nor represent a threat of flight.

In the letter, Warden Sublett also noted that Diaz had been disciplined four times between August 1, 1994, and August 17, 1999, receiving two letters of reprimand and two 40-hour suspensions without pay. The stated purpose of the demotion was to place Diaz in a position more consistent with his abilities and in which he could perform at an acceptable level.

¶ 4 Diaz appealed his demotion to the State Personnel Board. After a hearing, the hearing officer found that Diaz had violated the standards of conduct for State employees by conducting himself in a manner that brought discredit and embarrassment to the State, and that he had treated an inmate in an unprofessional manner by using profanity, both of which constituted insubordination under ADOC rules. The hearing officer also rejected the allegations of excessive force and a threat of physical violence against an inmate. Finally, the hearing officer concluded that demotion was a disciplinary measure within ADOC's discretion and was not clearly excessive. In making this determination, the hearing officer noted that the discipline imposed by ADOC was progressive discipline and that Diaz had been previously disciplined for similar misconduct.

¶ 5 The Board adopted the hearing officer's findings of facts and conclusions of law, except for the approval of the demotion as within ADOC's reasonable discretion. The Board determined that "[w]hile there is cause for disciplinary action, the disciplinary action of demotion was excessive." The Board substituted an alternative 80-hour suspension without pay.

¶ 6 ADOC filed a complaint for judicial review of the Board's decision pursuant to Arizona Revised Statutes ("A.R.S.") § 41-785(F) (Supp.2001). ADOC contended that demotion was within the range of possible disciplinary measures and the Board had made no finding that demotion was so disproportionate to the offenses as to be shocking to a sense of fairness. Accordingly, ADOC argued that the Board had improperly substituted its opinion for ADOC's and therefore the Board's decision was arbitrary and capricious.

¶ 7 The superior court upheld the Board's conclusion that the demotion was "excessive" discipline.[1] It determined that the Board's decision was supported by the evidence and was not arbitrary or capricious. ADOC timely appealed.

---

1. Two administrative decisions are involved: ADOC's decision to demote Diaz and the Board's decision to overturn the demotion and to impose suspension. The superior court reviewed the Board's decision.

¶ 8 The standard of our review of the superior court's determination is well-settled. When reviewing an administrative decision, the superior court may reverse the decision only if the court finds it to be illegal, arbitrary, or an abuse of discretion. *Siler v. Ariz. Dep't of Real Estate*, 193 Ariz. 374, 378, ¶ 13, 972 P.2d 1010, 1014 (App.1998). We review such a ruling by the superior court "to determine whether the record contains evidence to support the judgment, and in doing so, we reach the underlying issue of whether the administrative action was illegal, arbitrary, capricious or involved an abuse of discretion." *Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Products, Inc.*, 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App. 1990).

¶ 9 The Board has authority to reduce the disciplinary penalty chosen by ADOC only if the Board finds "the penalty to be excessive or made for reasons that are arbitrary, capricious or otherwise contrary to law." A.R.S. § 41-785(D) (Supp.2001). The Board may not substitute its opinion of a proper disciplinary measure for the one imposed by the agency if the measure falls within the range of permissible penalties and is not so disproportionate to the offense as to shock a sense of fairness. *See Maricopa County v. Gottsponer*, 150 Ariz. 367, 372, 723 P.2d 716, 721 (App.1986).

¶ 10 ADOC's decision to demote Diaz was not arbitrary, capricious or contrary to law. A disciplinary action is not arbitrary if it falls within the range of permissible discipline. *See id.* Under ADOC rules and disciplinary guidelines, the available disciplinary measures ranged from suspension to termination. Demotion was within the range of authorized disciplinary sanctions and therefore was not arbitrary.

¶ 11 ADOC's decision to demote Diaz was supported by the record. Indeed, the Board found that the evidence proved that Diaz had engaged in misconduct. The Board decided that: (1) Diaz violated the standards of conduct for State employees by conducting himself in a manner that brought discredit and embarrassment to the State in violation of Arizona Administrative Code R2-5-501; (2) his conduct constituted insubordination under Department Order 508; (3) Diaz treated an inmate in an unprofessional manner by using profanity, thus engaging in insubordinate conduct; (4) Diaz's conduct constituted cause for discipline under A.R.S. § 41-770; and (5) ADOC had imposed progressive discipline because Diaz had been previously disciplined for similar conduct.[2]

¶ 12 Finally, the demotion was not excessive discipline. A.R.S. § 41-785 does not define "excessive."[3] The Board did not explain why it found the demotion was excessive.[4] However, in similar contexts Arizona courts have determined that "an administrative penalty is excessive only if it is so disproportionate to the offense as to shock one's sense of fairness." *Schillerstrom v. State*, 180 Ariz. 468, 471, 885 P.2d 156, 159 (App. 1994) (holding that revocation of chiropractor's license by State Board of Chiropractic Examiners was neither excessive nor arbitrary). *See also Shaffer v. Ariz. State Liquor Bd.*, 197 Ariz. 405, 411, ¶ 29, 4 P.3d 460, 466 (App.2000) (using *Schillerstrom* test for excessiveness, liquor license revocation was not excessive); *Siler*, 193 Ariz. at 379, ¶ 19, 972 P.2d at 1015 (applying *Schillerstrom* test, suspension of real estate licenses and other sanctions were not excessive penalty); *Lathrop v. Ariz. Bd. Of Chiropractic Examiners*, 182 Ariz. 172, 179, 894 P.2d 715, 722 (App.1995) (revocation of chiropractor's li-

2. Warden Sublett also testified that Diaz should not be a supervisor, in part because he did not set a good example for other employees. This testimony was based on Diaz's present and prior misconduct and his failure to recognize that his actions were inappropriate.

3. This statute differs from statutes considered in similar cases by adding the excessive penalty language. However, the prior cases recognized that excessive discipline can be arbitrary or capricious and defined "excessive." Accordingly,

the language of A.R.S § 41-785(D) codifies rather than changes the well-established standard of review of agency action.

4. Diaz argues that the demotion was excessive because ADOC did not prove the allegations made in the demotion letter. However, the Board denied Diaz's objections to the hearing officer's findings of fact and conclusions of law, and Diaz did not seek review of that denial in the superior court. Therefore, our review is based on the findings adopted by the Board.

cense was not excessive); *Bear v. Nicholls,* 142 Ariz. 560, 563, 691 P.2d 326, 329 (App. 1984) (revocation of real estate broker's license was not excessive).

¶ 13 Arizona employee discipline decisions also have applied similar criteria in determining whether to uphold the discipline imposed by a governmental employer. In *Gottsponer,* a nurse was demoted after being discovered in a situation with a physician that had the appearance of violating the county's code of ethics. She appealed to the Merit System Commission, which substituted a two-day suspension for the demotion; the superior court affirmed the Commission's order. 150 Ariz. at 370, 723 P.2d at 719. On appeal, the *Gottsponer* court noted that "where the finding of guilt is confirmed and punishment has been imposed, the test is whether such punishment is 'so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness.' " *Id.* at 372, 723 P.2d at 721 (quoting *Petras v. Ariz. State Liquor Bd.,* 129 Ariz. 449, 452, 631 P.2d 1107, 1110 (App.1981) in turn quoting *17 Cameron St. Rest. Corp. v. New York State Liquor Auth.,* 48 N.Y.2d 509, 423 N.Y.S.2d 876, 399 N.E.2d 907, 909 (1979)). Applying that principle, the *Gottsponer* court concluded that "[w]here the Commission found discipline was warranted and demotion was within the range of permissible disciplinary acts, it could not modify the penalty imposed without determining it was so disproportionate to Gottsponer's offense as to be shocking to a sense of fairness." *Id.*

¶ 14 Similarly, in *Pima County v. Pima County Merit Sys. Comm'n,* 186 Ariz. 379, 923 P.2d 845 (App.1996), three county corrections officers were fired for violating regulations and policies concerning treatment of prisoners. The County Merit System Commission overturned the terminations and imposed suspensions. *Id.* at 380, 923 P.2d at 846. The trial court reinstated the dismissals of the officers. *Id.* Reviewing the record to determine whether it supported the Commission's "substitution of its opinion for that of the Department regarding the mode of

discipline most appropriate for [appellants]," the appeals court applied the *Gottsponer* criteria and concluded that the dismissals were not shockingly disproportionate to the offense and therefore the Commission should not have substituted its opinion of an appropriate disciplinary measure. *Id.* at 381–82, 923 P.2d at 847–48.[5] *See also Pima County Sheriff's Dep't v. Smith,* 158 Ariz. 46, 49, 760 P.2d 1095, 1098 (App.1988) (following *Gottsponer*); *Bishop v. Law Enforcement Merit Sys. Council,* 119 Ariz. 417, 421–22, 581 P.2d 262, 266–67 (App.1978) (applying disproportionality shocking test to discipline).

¶ 15 The Board was not authorized to modify the penalty imposed by ADOC unless Diaz's demotion was so disproportionate to his offenses as to shock a sense of fairness. The Board's decision that demotion was excessive is not supported by the grounds required to find a disciplinary action to be excessive, *i.e.,* that the penalty was disproportionate to the offense and shockingly unfair, and is therefore arbitrary and capricious.

¶ 16 Diaz's supervisory position, his history of past discipline, and the character of his most recent misconduct all support the severity of discipline imposed by ADOC. The Board apparently believed that a lesser penalty was adequate and preferable. But it may not merely substitute its opinion for that of ADOC. Therefore, the Board improperly modified ADOC's discipline and the superior court erroneously affirmed the Board's decision.

¶ 17 Accordingly, we reverse the superior court's decision and order and remand for entry of an order reversing the Personnel Board's decision and reinstating ADOC's demotion of Diaz.

TIMMER, Presiding Judge, EHRLICH, Judge, concurring.

---

5. The Board's arguments that *Gottsponer* and *Pima County* are distinguishable because they involve a different statute and because the Board has specific authority to modify an agency decision are without merit. Although the cases involve a different statute, they involve the same "excessive" standard and both recognize the reviewing body's limited authority to alter the agency's action.