**Richard BROOKS, Appellant,**

**v.**

**CIVIL SERVICE COMMISSION OF SHALER TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued June 8, 2000.

Decided July 7, 2000.

Charles R. LoPresti, Pittsburgh, for appellant.

Robert E. Durrant, Pittsburgh, for appellee.

Before COLINS, J., PELLEGRINI, J., and JIULIANTE, Senior Judge.

COLINS, Judge.

Richard Brooks appeals the order of the Court of Common Pleas of Allegheny County affirming the termination of his employment as Shaler Township patrol officer pursuant to Section 644(2) and (4) of The First Class Township Code,[1] which in pertinent part authorizes dismissal of a police officer for "neglect or violation of any official duty" and "inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer."

In September 1997, the Township specified charges against patrol officer Brooks and recommended termination of his employment. At the time the charges were filed, Brooks had just returned to work after recovering from injuries sustained in a September 1996 automobile accident that occurred in Arizona while Brooks was on vacation. The charges detailed Brooks'

---

1. Act of June 24, 1931, P.L. 1206, added by Section 20 of the Act of May 27, 1949, P.L. 1955, *as amended,* 53 P.S. § 55644(2) and (4).

history of thirteen on-duty automobile accidents from 1975 through 1993, including one instance of striking a pedestrian and the pedestrian's dog in 1991 and failing to report the incident until the end of his shift.[2]

Over the course of his nearly 23–year career as a patrol officer with the Township, Brooks was warned of the eventual consequences of his careless driving and was repeatedly disciplined. For example, Brooks was warned about his driving in 1977 after his first four accidents; he was suspended for one day in 1977 for his failure to report damage to his police vehicle and his attempt to cover up the damage; in connection with pushing the disabled vehicle with his patrol car, he received a warning that his behavior was in conflict with police procedure, exhibited poor judgment, and was extremely hazardous; and he was suspended for five days in 1979 for damaging police vehicles. A Public Safety Committee considered dismissing Brooks in 1979 after finding him to have been negligent in connection with his many on-duty automobile accidents. Brooks was suspended for sixty days in 1984 for conduct unbecoming a police officer for engaging in sexual activity in his police vehicle while on duty. Township police officials repeatedly urged and advised Brooks to use caution and to drive defensively, and they sent him to driver training courses for police officers in March–April 1989 and in September 1996, just before Brooks was involved in the off-duty accident in Arizona.

After hearings, the Civil Service Commission credited the testimony of police chief Jeffrey Gally and township manager Timothy Rogers, who detailed Brooks' history of automobile accidents and the instance of on-duty sexual activity for which he was charged with conduct unbecoming a police officer. In addition to the documented accidents, Rogers testified that he had on more than one occasion witnessed Brooks tailgating and driving at excessive speeds. (Notes of Testimony, p. 123.) Rogers also testified as to the Township's concerns about liability, public safety, and the efficiency of, and public perceptions of, its police department in connection with Officer Brooks' driving skills.

The Commission concluded that Brooks' history of on-duty automobile accidents, together with the Arizona accident, demonstrated a pattern of poor judgment that rose to the level of violation of official duty, inefficiency, neglect, intemperance, disobedience, and conduct unbecoming an officer. The Commission noted that while it considered the off-duty Arizona accident in making its disciplinary determination, its decision did not rely on that accident except to the extent that it contributed to the number, seriousness, pattern and nature of the overall history of automobile accidents. It concluded that the Township had a legitimate interest in avoiding uninsurable liability, protecting its insurability, protecting the public, and preserving public confidence in its police department. The court of common pleas affirmed.

On appeal to this Court,[3] Brooks argues that the Commission abused its discretion

2. The thirteen on-duty accidents charged were as follows: June 1975, lost control of patrol car and struck a pole; November 1975, struck the rear bumper of another vehicle leaving a parking lot; January 1977, slid off the roadway in order to avoid hitting a stalled vehicle; March 1997, struck a large rock at an intersection while turning; August 20, 1997, damaged patrol car while pushing a disabled vehicle from the highway in violation of police procedures; August 31, 1997, hit a metal stake while backing out of a driveway; December 1978, slid on an icy roadway, crossing into the opposite lane, severely damaging another vehicle and injuring the other driver; May 1984, struck a vehicle perpendicular to his patrol car while both attempted a left turn; January 1989, slid into a private yard; January 17, 1991, struck a pedestrian and his dog; January 28, 1991, struck another vehicle at intersection; March 1992, ran over a storm drain and struck a stone wall; December 1993, struck another vehicle while backing out of a driveway and hit a tree.

3. Our review, where the trial court has taken no additional evidence, is limited to determining whether the civil service commission

in terminating Brooks, which termination, it asserts, was based solely on the off-duty accident that occurred in Arizona. In support of that argument, Brooks reasons that he was a 23–year veteran of the Township police force, who was disciplined for his prior driving infractions and whose professional record was incident-free from 1993 to 1996. He argues that he did not neglect his official duty when he became involved in an accident in Arizona, nor did that accident constitute inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer. In making this argument, he also argues that the Township's decision to terminate his employment on the basis or one or more motor vehicle incidents is clearly disproportionate in light of this Court's decision in *Appeal of Leis,* 72 Pa.Cmwlth. 104, 455 A.2d 1277 (1983).

■ We begin by noting that in reviewing disciplinary actions against police officers, a civil service commission must determine whether the charges brought against the officer are supported by the evidence, whether the penalty imposed is not otherwise prohibited, and whether the penalty is not arbitrary, discriminatory, or an abuse of discretion. *Batty,* 694 A.2d at 397. Our review of the record convinces us that the Commission properly determined that the evidence supported the charges against Brooks.

Brooks acknowledged all of the on-duty accidents to which Gally and Rogers testified; he prepared the incident reports from which they testified, and he acknowledged the incidents in his testimony before the Commission. In his own testimony, Brooks disputed only the Township's characterization of some of the incidents. Brooks testified that many of the incidents occurred during inclement weather, during emergency calls, or were otherwise unavoidable. The Commission, while not discrediting Brooks' testimony about the on-

duty accidents, found that is was not corroborated by any other evidence. In our view, even if many of the accidents occurred during inclement weather and/or when Brooks was responding to emergency calls, the ·Township has a legitimate expectation that its patrol officers should be able to exercise the requisite discretion when responding to calls, even in inclement weather, such that the calls are handled efficiently and without resulting in injury or damage to the Township's patrol vehicles.

Nothing in the record supports Brooks' contention that his termination was based solely on the 1996 off-duty accident that occurred in Arizona. The Commission specifically stated that it considered that accident but did not make it the basis for its decision. Gally and Rogers explained the timing of the Township's decision to bring charges after Brooks recovered from injuries sustained in that accident. The record establishes that the Township expressed on-going concern with Brooks' driving record; Brooks last attended a police driving course in September 1996, just before the Arizona accident; and Township officials believed that Brooks would not be able to return to duty owing to the injuries he sustained in that accident. The evidence supports the charges brought against Brooks, and it is irrelevant that Brooks had no accidents between December 1993 and September 1996.

Brooks' argument based on *Appeal of Leis* is misplaced. The officer in *Leis* was suspended for three days without pay on a charge of conduct unbecoming a police officer based on a single motor vehicle accident that occurred when he ran a red light when responding to an emergency call using lights but no siren. This Court reversed the suspension on appeal on the grounds that a police vehicle responding to an emergency is entitled to go through a red signal and is exempt from the highway

abused its discretion or committed an error of law. *York Township Board of Commissioners v. Batty,* 694 A.2d 395 (Pa.Cmwlth.), *petition*

*for allowance of appeal denied,* 550 Pa. 695, 704 A.2d 1384 (1997).

**118**

right-of-way rules when using emergency lights and sirens. In that case, the police department rules made use of sirens a judgment call, and the officer adequately explained his decision to proceed without sirens.

 Brooks was not terminated for a single lapse in judgment as was the officer in *Leis*. Brooks' history reveals that most if not all of the accidents resulted from his following too close to another vehicle, his inability to anticipate obstacles, his consistent failure to exercise good judgment, and his lack of awareness of surrounding conditions. Brooks' failure to improve his driving and his inability to respond to emergencies without endangering himself, the public, and his patrol car at the very least constitute neglect, inefficiency, and conduct unbecoming a police officer, which has been defined to include conduct that adversely affects the morale and efficiency of the police force or tends to destroy public respect for, and confidence in, the police force. *Kazmarek v. New Bethlehem Borough Council*, 84 Pa.Cmwlth. 19, 478 A.2d 514 (1984). Moreover, the Township was justified in terminating Brooks' employment given his lengthy history of such accidents and its legitimate concerns about liability, public safety, and the efficiency and public perception of its police department.

Accordingly, the order of the trial court is affirmed.

### O R D E R

AND NOW, this 7th day of July 2000, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.